## NATHAN PERKINS & wife *vs.* JOEL ADAMS.

In the trial of an action by a mortgagee against a town clerk for not recording a mortgage of personal property, so that the property was attached and sold on execution by the mortgagor's other creditors, the plaintiff introduced the deposition of the mortgagor, taken under a commission, in which he deposed that he delivered the mortgage to the defendant to be recorded, and paid him his fees, &c. The defendant had filed a cross interrogatory, asking the deponent when he was first informed that the mortgage was not recorded — what steps or measures he took relating to the same — whether he made any communication to the mortgagee respecting the mortgage not being recorded — and what directions he received from the mortgagee in consequence of such communication. A part of the deponent's answer was, that he informed the mortgagee that the property was lost through the carelessness of the defendant, and that there was no way to recover it from the attaching officer, as the mortgage was lost, and there was no copy of it; that he also told the mortgagee that he (the deponent) considered the defendant holden for the payment of it, or bound to make it good; that the mortgagee replied, that he did not wish to go to law; and that nothing more was then said or done about it. *Held,* that this part of the deponent's answer was admissible in evidence against the defendant.

*Held also,* that the defendant was rightly permitted to give in evidence, for the purpose of discrediting the deponent, a letter written by him, a short time before the mortgaged property was sold on execution, to one of his creditors, who had attached it, saying that he should be in no haste to pay the debt, and would pay no cost, and threatening the creditor with trouble, if he should dare to sell the property on execution.

THIS was an·action of trespass upon the case to recover damages alleged to have been sustained by the female plaintiff, while sole, in consequence of official neglect of the defendant, while clerk of the town of Chelmsford, in not recording a mortgage of personal property which the plaintiffs averred was delivered to him for that purpose.

The plaintiffs, at the trial, produced the deposition of Alonzo Cutter, which was taken, September 23d 1840, under a commission, and in which he testified, among other things, that in the autumn of 1834 he owed his mother in law, Mary Lyman, now Mrs. Perkins, one of the plaintiffs, two hundred dollars, and that she at the same time was liable, as indorser for him, for three hundred and ninety dollars which she afterwards paid : That he at that time executed to her, as security, a mortgage of certain patented machinery, of the value of one thousand dollars, and by her directions carried the same to the office of the defendant, who was then town clerk. and where the town records

were then kept, and delivered it to the defendant with orders to record it, and at the same time paid him his fees for recording, which the defendant accepted : That he had no other conversation with the defendant on the subject, until he went to Chelmsford in February or March 1836, for the purpose of ascertaining how his matters stood : That during the last of the fall of 1835 and most of the winter of 1835 and 1836, the witness was confined by sickness in the State of Maine, where he was when he first learned that said machinery had been attached on writs issued against him : That when at Chelmsford in February or March 1836, he asked the defendant for the mortgage, who replied that it had never been recorded, and that he supposed that it was lost, destroyed or burnt up, as he had not seen it since it was left with him, and he supposed it was settled.

The witness further deposed that his said mother in law was residing at his house in Chelmsford, at the time said mortgage was given, and that in the spring of 1835, she married to her present husband and removed to Amherst, where she has since resided : That he (the deponent) resided in Chelmsford till about October 1835, when he went to the State of Maine, and intended to have removed the machinery there if it had not been attached ; and that by the terms of the mortgage he was entitled to the possession of the machinery, and that his right to the possession and use of it had not expired on the 2d of April 1836.

It was proved that the defendant, in November or December 1835, filled four writs, as the attorney of William Fletcher, jr. and others, creditors of said Alonzo Cutter, and caused said machinery to be attached on the same ; that judgments were rendered in said suits, at the March term of the court of common pleas, 1836 ; and that said machinery was sold on the executions which issued on the same, dated April 2d 1836.

The defendant propounded the following cross interrogatory, among others, to said Cutter. " When were you first informed that the mortgage was not recorded ? and what steps or measures did you take in relation to the same ? did you make any communication to your mother in law respecting said mortgage not being recorded ? and when and where did you first make

any such communication? who was present at the time? and what directions did you receive from your mother in law in consequence of such communication? what measures did you pursue in consequence of such information that such mortgage was not recorded?"

"To the third cross interrogatory the said Alonzo Cutter answereth and saith, that the first information I had that said mortgage had not been recorded was when 1 returned to Chelmsford in February or March 1836. [When I returned to Am herst where my mother in law resided, I informed her that the property was lost through the carelessness of Adams in not recording the mortgage, and that there was no way to recover it from the attaching officer, as the mortgage was lost and there was no record copy of it. At the same time, I told her that I considered Mr. Adams holden for the payment of it, or bound to make it good. She told me she did not wish to go to law; and nothing more was said or done about it at that time.] I do not recollect that any one was present at the time."

The court ruled that the portion of the foregoing answer, which is inclosed in brackets, was incompetent, and rejected it.

The defendant contended that the testimony of said Cutter was false and that the mortgage was never delivered into his hands with orders that he should record it, but that he received it to hold, and not to record until further orders; and that he never received any further orders.

It appeared that Cutter, as soon as his health would permit, went from the State of Maine to his father's in Warren, (Mass.) where he remained until he came to Chelmsford and saw the defendant. And there was no evidence that he had any communication with his mother in law previous to his writing the letter, hereafter mentioned, to William Fletcher, jr. It also appeared that the Mr. Gardner, spoken of in said letter, had been in said Cutter's employ in Chelmsford, and was taking down and packing the machinery for the purpose of carrying it to Maine, when it was attached in November or December, 1835.

The letter, of which the following is a copy, was offered by the defendant, for the purpose of contradicting the deposition of

said Cutter. The plaintiffs objected to the admission of the letter in evidence, but the court admitted it.

" Warren, February 23d 1836.

" Sir. Your letter under date the 5th inst. is this day received, and in answer I would just say, had you not have sued me, the debt would have been paid months ago by my brother in Boston ; but as you have conducted as you have, I shall not be hurried to pay it, I assure you. But still I do n't wish to be understood that I do n't mean to pay ; for if my life is spared, I shall pay all my honest debts, but no cost. Perhaps you think I am plain, but I mean to be so, after being treated as I have been by you during my sickness. I would not have treated a dog as you have treated me. I have been informed that you have attached the machinery ; if so, and you sell them, you will have difficulty ; as Mr. Gardner has been here and informed me the whole story, and I have consulted a lawyer, and he says that if you cause them to be sold on execution unboxed, it will cause you trouble and liable to a heavy damage. If you dare risk it, go on with your play, and see if you do n't get your money's worth.                                               A. Cutter.

" P. S. I do not wish to give any persons trouble, unless they trouble me. I should advise you as a friend to keep still if you want your money."

This letter was directed to " Capt. William Fletcher, jr. Chelmsford, Mass." and was mailed on the 27th of the same February. Said Fletcher was first attaching creditor of said machinery.

A verdict was returned for the defendant.

New trial to be granted, if that part of Cutter's deposition, which was excluded, ought to have been admitted, or if his letter, which was admitted, ought to have been excluded.

*Farley & G. Parker*, for the plaintiffs.

*L. Williams & Mellen*, for the defendant.

HUBBARD, J. A new trial is moved for in this case, by the plaintiffs : 1st. Because a part of the answer of Alonzo Cutter, a witness whose deposition was taken by the plaintiffs, to one of the defendant's interrogatories, was not permitted, by the pre-

Perkins & wife *v.* Adams.

siding judge, to be read in evidence to the jury. 2d. Because he admitted a letter of said Cutter to William Fletcher, jr. to be read to the jury.

The witness was asked what measures or steps he pursued; whether he made any communication in relation to the mortgage not being recorded; and what directions he received in consequence of such communication. And the objection is to his conversation with his mother in law, the mortgagee, and one of the plaintiffs.

He was certainly bound to tell the steps which he pursued, and the directions which he received; and we think what he stated at the time to the party was a part of the steps he pursued, was responsive to the general inquiry, and that the answer, on the whole, would be incomplete without the conversation as constituting a part of the communication. If the witness had stated that he did make a communication, without stating what it was, it might have been argued that he withheld it, because it would be unfavorable to the plaintiffs, and so the plaintiffs would have been prejudiced.

A witness may always be subjected to a strict cross examination, as a test of his accuracy, his understanding, his integrity, his biases, and his means of judging. But the party who puts the questions must risk the answers, and if unfavorable to him, he cannot, for that cause merely, reject them, but if favorable, retain them. We think the whole answer should have been admitted. If the part rejected had been, in our opinion, immaterial to the issue, we should not have deemed the rejection of it a cause for a new trial; nor if the things testified to were proved satisfactorily by other testimony. But it appears to us that the answer is of some importance in its bearing on the issue, in respect to matter not proved by other witnesses. The verdict therefore must be set aside and a new trial granted.

In relation to the letter of the witness to Fletcher, the admission of which was objected to as not contradicting the witness, we think it relates to the subject in difference between the parties; and as its tendency might have been to discredit the witness, we are of opinion that it was rightly admitted.